IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| DEBORAH S. TURNER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 04-0887-SSA-CV-W-WAK |
| ) | |
| JO ANNE B. BARNHART, Commissioner, ) | |
| Social Security Administration, ) | |
| ) | |
| Defendant. ) | |

## ORDER

Claimant seeks judicial review,[1] pursuant to 42 U.S.C. § 405(g), of a final administrative decision denying disability benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq.* She claims she became disabled beginning on September 1, 1995. The parties' briefs were fully submitted, and on September 21, 2005, an oral argument was held.

"Title II of the Social Security Act provides for the payment of insurance benefits to persons who suffer from a physical or mental disability, and Title XVI provides for the payment of disability benefits to indigent persons. The Act further provides that 'an individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . .' 42 U.S.C. § 423(d)(2)(A) (2003)." Lewis v. Barnhart, 353 F.3d 642, 645 (8th Cir. 2003).

In reviewing the administrative record, the court must sustain the Commissioner's decision if the findings are supported by substantial evidence on the record as a whole. 42 U.S.C. § 405(g); Young v. Apfel, 221 F.3d 1065, 1068 (8th Cir. 2000). The court may not,

---

[1]With the consent of the parties, this case was assigned to the United States Magistrate Judge, pursuant to the provisions of 28 U.S.C. § 636(c).

however, "rubber stamp" the Commissioner's decision, but must examine both the evidence that supports and detracts from the administrative determination. Piercy v. Bowen, 835 F.2d 190, 191 (8th Cir. 1987); Cline v. Sullivan, 939 F.2d 560, 564 (8th Cir. 1991).

The claimant has the initial burden of establishing the existence of a disability as defined by 42 U.S.C. § 423(d)(1). See Roth v. Shalala, 45 F.3d 279, 282 (8th Cir. 1995). To meet the statutory definition, "the claimant must show (1) that he has a medically determinable physical or mental impairment which will either last for at least twelve months or result in death, (2) that he is unable to engage in any substantial gainful activity, and (3) that this inability is the result of his impairment." McMillian v. Schweiker, 697 F.2d 215, 220 (8th Cir. 1983).

If the claimant establishes the impairment is sufficiently severe to prevent return to a former occupation, the burden shifts to the Commissioner to produce evidence the claimant can perform other substantial gainful employment. Buck v. Bowen, 885 F.2d 451, 454 (8th Cir. 1989). The Commissioner need not find a specific job opening for the claimant, but must demonstrate that substantial gainful activity is realistically within the capabilities of the claimant. McMillian, 697 F.2d at 221.

When reviewing the record to determine if there is substantial evidence to support the administrative decision, the court considers the educational background, work history and present age of the claimant; subjective complaints of pain or other impairments; claimant's description of physical activities and capabilities; the medical opinions given by treating and examining physicians; the corroboration by third parties of claimant's impairments; and the testimony of vocational experts when based upon proper hypothetical questions that fairly set forth the claimant's impairments. McMillian, 697 F.2d at 221.

Claimant Deborah Turner was born in 1964, is married and has one child. She completed high school and has previous work experience as a dental assistant, receptionist and bartender. She was last insured for Social Security benefits on December 31, 2000, and thus, must have been disabled prior to that date to obtain benefits. She claims she became

Case 4:04-cv-00887-WAK    Document 17    Filed 10/04/05    Page 2 of 6

disabled on September 1, 1995, because of fibromyalgia and two bulging discs in her lower back.[2]

The Administrative Law Judge (ALJ) determined she had a residual functional capacity which would allow her to perform a range of sedentary work where she could sit and stand optionally throughout the workday with no lifting below the waist. She challenges the ALJ's findings and asserts the ALJ erred in making credibility decisions in ignoring her fibromyalgia and relying on vocational testimony based on an inaccurate hypothetical.

Dr. Brahms testified at the administrative hearing, by telephone, as a medical expert based upon his review of the medical records. He was advised of claimant's alleged onset date and that her insured status expired on December 31, 2000. Thus, his testimony related to the evidence of her condition prior to that date. He stated that MRI's showed bulging discs at L4-5 and L5-S1 with no evidence of nerve root impingement. He said there were no objective findings of fibromyalgia or other low back pathology which would render Turner incapable of working under restricted circumstances prior to her last insured date.

The ALJ found Dr. Brahms' testimony and conclusions to be consistent with the evidence in the record. He noted several records which supported his position, but also acknowledged through his recitation of the evidence that it was clear claimant suffered from pain and was being regularly treated for it in a variety of ways.

Turner asserts, and the court agrees, that the ALJ erred in relying so heavily upon the testimony of the medical expert, Dr. Brahms, and in not giving more weight to the other evidence in the record. Clearly, Dr. Brahms, who had not examined claimant and who may or may not have seen the actual MRI's or CT scans, appeared to have erred in concluding Turner did not have nerve root impingement.

The medical records show that Dr. Swaim of Jackson County Orthopedics, Inc., examined Turner in September 1995and reviewed her CT scan. He indicated that she had what appeared to be a small disc herniation of the L4-5 and L5-S1 levels and assessed that disc herniation with nerve root impingement. (Tr. 147.) In October 1995, claimant was

---

[2]Turner testified that her back problems started in 1995, after she fell down a flight of stairs and that her fibromyalgia symptoms were evident in 1999.

3

evaluated at a pain management clinic, and Dr. Chaplick's impression was lumbar radiculopathy. (Tr. 218.) Over the course of the next couple of years, she was treated with conservative measures, then epidural injections, prescription medications and physical therapy. The report of an MRI taken on August 26, 1996, indicated Turner had a "small focal central posterior disc protrusion at L4-5 impinging upon the thecal sac and proximal L5 roots" and a "central posterior annual bulge at L5-S1 without obvious S1 root compression or displacement." In March 1997, claimant was examined by Dr. Edwards in the Pain Clinic at the Medical Center of Independence. His impression was "lumbar radiculopathy most likely of the left L5 nerve root." (Tr. 203.) Another MRI was performed in December 2000 and it continued to show small disc protrusions. The report did not indicate root compression or displacement.

Under these circumstances, Dr. Brahms' testimony, though supported by a few records, is inconsistent with the overall record, and the ALJ's ultimate decision on this matter was not supported by substantial evidence on the record as a whole.

Claimant also asserts the ALJ erred in not considering her fibromyalgia in making his determination. The ALJ mentioned the condition only with regard to the testimony by Dr. Brahms that there were no objective findings to support the diagnosis. Dr. Brahms' document listing his professional qualifications as a medical expert states his primary specialty was orthopedics. His expertise with regard to fibromyalgia is unknown and he did not examine claimant. Thus, the ALJ erred in apparently giving more weight to that testimony than to the records of the consulting rheumatologist who had examined Turner at the request of her treating physician.

In July 2001, Turner was evaluated by a rheumatologist for fibromyalgia. At that time, she told the physician she had been having problems for more than a year, including progressive muscle pain, burning, flu-like symptoms, painful joints, extreme fatigue and nausea. She indicated some previous pain medications and muscle relaxers had caused side effects. Her physical examination was notable only for marked multiple tender points diffusely. Dr. Katzenstein wrote to Dr. Mouse, who had made the referral, that he believed Turner "did indeed have fibromyalgia.." (Tr. 167.) While he does not indicate at what point she developed that condition, an inference could reasonably be made from his letter that it

4

developed in conjunction with her symptoms. He appeared to credit her recitation of her symptoms and history.

Over the course of the next several years, claimant continued to seek medical treatment for fibromyalgia symptoms and for back pain. By 2003, her back condition had deteriorated to the point that she agreed to have a percutaneous disc decompression and aspiration.

At the administrative hearing, Turner testified that she needed help caring for her child when he was younger, that her husband did most of the housework when he came home from work, she could sit for only short periods of time, that she would lay down for 10 to 45 minutes each hour, and that by the time of the hearing, she was being treated for anxiety and depression.

Thus, the overall record in this case reveals a lady who began having problems in 1995 and who continued to have problems, in varying degrees, over the relevant years. The records clearly show that her condition worsened, treatments were generally effective for only short periods of time, and that at some point, her ability to engage in the day-in, day-out competitive work environment was seriously compromised.

While this court is not persuaded by the record that claimant was disabled at her alleged onset date of September 1, 1995, the court does find that she was disabled by the end of her last insured date on December 31, 2000.

The Eighth Circuit has repeatedly held that "the inquiry must focus on the claimant's ability 'to perform the requisite physical acts day in and day out, in the sometimes competitive and stressful conditions in which real people work in the real world.'" Tang v. Apfel, 205 F.3d 1084, 1086 (8th Cir. 2000). Given the medical evidence, the record does not support the ALJ's conclusion that claimant could do so. He should have given more credence to Turner's testimony that her daily activities were seriously limited, or better explained his reasons for not doing so.

For these reasons and those set forth in more detail in the claimant's brief and at the oral argument, it is

5

ORDERED that the decision of the Commissioner is reversed and the case is remanded to the Commissioner under Sentence 4, 42 U.S.C. § 405(g), for an award of benefits beginning with the last month of Turner's insured status.

Dated this 4th day of October, 2005, at Jefferson City, Missouri.

/s/

WILLIAM A. KNOX
United States Magistrate Judge